# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| AARON WILLIAMS<br>　　LA. DOC #253286<br>VS.<br><br>WARDEN SHEVER, ET AL. | CIVIL ACTION NO. 08-2030<br><br>SECTION P<br><br>JUDGE JAMES<br>MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Aaron Williams, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 9, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is incarcerated at the South Louisiana Corrections Center, Basile, Louisiana, but he complains that he was denied "bottom bunk" status, resulting in injuries, and then denied appropriate medical treatment while he was incarcerated at the Madison Parish Corrections Center (MPCC), Tallulah, Louisiana. Plaintiff sues MPCC Warden Shever and Deputy Moore. He prays for compensatory and punitive damages of $2.5 million. This matter has been referred to the undersigned for review, report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

### *Background*

Plaintiff filed an original complaint [rec. doc. 1] on December 29, 2008; he was twice ordered to amend to provide additional factual support for his claims and on June 1 and August 10, 2009, he amended and provided the information requested. [rec. docs. 8 and 10] The

complaints establish the following facts, which for the purposes of this Report are accepted as true:

On some unspecified date, some unspecified person authorized bottom bunk status for plaintiff because on some prior unspecified date, prior to his incarceration, he had back fusion surgery which limited his ability to climb and which caused unspecified sleep difficulties. These findings and precautions were (or should have been) noted in his record. [rec. doc. 10, p. 3] On some unspecified date plaintiff was transferred from a corrections center in LaSalle Parish to the MPCC. On March 27, 2008, Nurse Wanda Nolan of the MPCC medical staff noted the "bottom bunk medical authorization" in plaintiff's medical records and issued such an authorization.[1]

On October 10, 2008, plaintiff was informed by Deputy Moore at MPCC that he was being transferred to another dormitory and assigned to a top bunk. Plaintiff protested and advised Moore of the bottom bunk authorization; however, Moore disregarded plaintiff's protests.

On October 15, 2008, while plaintiff was sleeping, he fell from the top bunk injuring his head and the right side of his back. Plaintiff was transported to the Madison Parish Hospital

---

[1] In his original complaint plaintiff alleged, "On March 27, 2008, I was issue an bottom bunk medical authorization in my institutional medical records." [rec. doc. 1] In his first amended complaint he alleged, "Plaintiff was transferred to the Louisiana Department of Public Safety and Corrections via its agent LaSalle Correctional Center on March 27, 2008. Subsequently, a medical evaluation was had on plaintiff, it was diagnosed that because of plaintiff previous operation of back fusion and sleeping complication that he be authorized bottom bunk status while incarcerated. Plaintiff was later transferred to Madison Parish Correctional Center. Upon intake at the aforementioned facility plaintiff's medical records were evaluated and bottom bunk status was adhered to." [rec. doc. 8] In his second amended complaint he implied that he was in custody at MPCC on March 27, 2008 and that Nurse Nolan authorized bottom bunk status based on notations in his medical record. [rec. doc. 10] He also alleged, "Plaintiff experience two back fusion operations prior to his incarceration. ...[B]efore plaintiff was given said authorization at Madison Parish Plaintiff was already given said authorization from LaSalle Correctional Denter Mdical Department. Therefore authorization should have been lodged in plaintiff's medical record." [rec. doc. 10, pp. 6-7]

2

Emergency Room. [rec. doc. 10, p. 5] CT Scans[2] of his face and lumbrosacral spine were ordered [rec. doc. 10-2, p. 3] and, based on his examination of plaintiff, the emergency room physician, Dr. Everett Brown, concluded that plaintiff sustained a contusion or bruise.[3] Plaintiff was advised to apply ice to the injured area and to limit activity which might worsen the pain. He was advised to seek medical attention for any "severe increase in pain or swelling...", "numbness and tingling..." or "a cold, pale foot/hand that appears to have a problem with its blood supply." He was also provided 500 mg. Naproxen[4] and directed to take the medication twice daily. [rec. doc. 10-2, pp. 1-2]

On October 17, 2008, Nurse Nolan authorized an extra mattress for plaintiff. [rec. doc. 10, p. 3][5] Then, on November 3, 2008, plaintiff was transferred to another prison. [rec. doc. 10, p.

---

[2] A CT scan or computed tomography scan is an imaging method that uses x-rays to create cross-sectional pictures of the body. Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health. Encyclopedia, "CT scan" at http://www.nlm.nih.gov/medlineplus/ency/article/003330.htm

[3] A contusion or bruise is an area of skin discoloration which occurs when small blood vessels break and leak their contents into the soft tissue beneath the skin. Examination and treatment by medical professionals is unnecessary unless there is extreme pressure in a bruised area which is large or very painful; or if the bruise occurred spontaneously without any injury, fall, or other reason; or, if there are signs of infection such as streaks of redness, pus, or other drainage, or fever. Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health. Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/007213.htm

[4] Naproxen is in a class of medications called NSAIDs (nonsteroidal anti-inflammatory drugs). It works by stopping the body's production of a substance that causes pain, fever, and inflammation. Naproxen .is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints), rheumatoid arthritis (arthritis caused by swelling of the lining of the joints), juvenile arthritis (a form of joint disease in children), and ankylosing spondylitis (arthritis that mainly affects the spine). Prescription naproxen tablets, extended-release tablets, and suspension are also used to relieve shoulder pain caused by bursitis (inflammation of a fluid-filled sac in the shoulder joint), tendinitis (inflammation of the tissue that connects muscle to bone), gouty arthritis (attacks of joint pain caused by a build-up of certain substances in the joints), and pain from other causes, including menstrual pain (pain that happens before or during a menstrual period). Nonprescription naproxen is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches. Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs & Supplements, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html

[5] Plaintiff's chronology of events is unlikely. In describing this event, he stated, "She [Nurse Nolan] had previously issued ... an extra mat medical authorization on 10-17-08..." [rec. doc. 10, p. 3] so, it is more likely than

5] Plaintiff was twice ordered to provide a "description of the treatment he received..." [rec. docs. 7 and 9] but, other than the treatment received immediately following the incident, he has not alleged that he needed or sought further medical attention.

*Law and Analysis*

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

---

not that the extra mat authorization occurred prior to the top bunk assignment and prior to the accident in question.

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint was deemed insufficient. Plaintiff was instructed on the law and provided two opportunities to amend his complaint. Plaintiff has obviously presented his best case and need not be afforded additional opportunities to amend. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his medical care complaint is frivolous.

*2. Medical Care and Conditions of Confinement*

Plaintiff claims that he was denied appropriate medical care at MPCC. Medical care claims, when asserted by convicted prisoners like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part

of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Finally, disagreement with diagnosis and treatment cannot support a claim of deliberate indifference.

6

*Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Plaintiff has named only two defendants: (1) Warden Shever and (2) Deputy Moore. Plaintiff faults the Warden for "... deliberate indifference in his supervisory capacity..."; he faults Deputy Moore for his "deliberate indifference toward plaintiff" in assigning a top bunk after having been put on notice of plaintiff's bottom bunk medical authorization. [rec. doc. 10, p. 6]

He states no claim against Warden Shever. Plaintiff was previously advised, "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). Plaintiff has alleged no personal fault on the part of the Warden and his allegations that the Warden failed "... to implement or adhere to policy..." are conclusive and insufficient to state a claim against this defendant.

Plaintiff's claim against Deputy Moore fare no better for two reasons. First, with regard to the medical care claim, plaintiff has not shown that Moore was aware of facts from which an inference of substantial risk of serious harm could be drawn, or that Moore actually drew that inference, or that Moore's response indicated that he subjectively intended that harm occur to

plaintiff. Compare, *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. By his own admission, plaintiff was initially afforded bottom bunk status because his prior back surgery limited his ability to climb and because he experienced unspecified "sleep difficulties." [rec. doc. 10, p. 3] Plaintiff also admitted that the accident in question occurred when plaintiff, who was asleep, fell from the top bunk. The accident was in no way related to the reasons given to justify bottom bunk status. Thus, plaintiff's allegations, accepted as true for the purposes of this analysis, do not indicate that Moore was aware of a substantial risk of harm from plaintiff falling from the top bunk in his sleep. Indeed, plaintiff was just as vulnerable to this hazard when sleeping in the bottom bunk. Had plaintiff sustained injuries from a fall occurring while climbing in or out of the top-bunk, his claim would have at least some causal validity. In other words, plaintiff simply has not shown that Moore, or anyone, was aware of a substantial risk of harm and therefore plaintiff has not shown deliberate indifference.

Further, with regard to the implied claim that plaintiff was denied medical care after the accident, he has not shown fault on the part of either Moore or the Warden. Indeed, the record demonstrates that plaintiff was immediately cared for following the accident. There is no indication that he sought and was denied further treatment following his discharge from the Madison Parish Hospital emergency room.

Second, plaintiff implies that he was confined under dangerous conditions. The Eighth Amendment does not mandate comfortable prisons; however, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999). Therefore, the conditions under which a prisoner is confined, just like medical care claims, are subject to scrutiny under the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain. See *Rhodes v.*

*Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation in this context. *Harper*, 174 F.3d at 719 . First, there is an objective requirement to demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown, as in the context of medical care complaints, that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the <u>unnecessary and wanton infliction of pain</u> implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff complains that he was forced to sleep in a top bunk, notwithstanding his pre-existing back problems. He claims that he fell from the top bunk and sustained injury. However, as shown above, he does not demonstrate how his fall was attributable to the deliberate

9

indifference of any defendant.

Further, even if he could make such a showing he would not be entitled to relief since the medical evidence tendered by the plaintiff himself establishes that he sustained no more than *de minimis* injury[6] and that fact is sufficient to warrant dismissal of his conditions of confinement and medical care claims against the defendants.

In short, Plaintiff's Eighth Amendment claims are frivolous.

### 3. Conclusion and Recommendation

Considering the foregoing

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C.

---

[6] In *Luong v. Hatt*, 979 F.Supp. 481 (ND Tex. 1997), the court analyzed the "physical injury" requirement in the context of excessive force or failure to protect claims. The court reasoned that the determination of whether or not an injury exceeds the *de minimis* threshold should be determined based upon how "...people in a free world setting in exercising their day-to-day medical care would treat such injuries." *Luong*, 979 F. Supp. at 486. The court reasoned, "Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] *de minimis*, would ... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *Id.*

Plaintiff has alleged that the conditions complained of caused "...sores over plaintiff's body, weight loss, rashes that caused my skin to flake, and scalp to flake and areas to scab-up, a boil on my private area..." None of these conditions necessarily require treatment by a medical care professional. All are treatable in the home with common over-the-counter medications. In short, plaintiff's alleged injuries are *de minimis*.

Here, the evidence tendered by the plaintiff establishes that at worst, he sustained a bruise as a result of his unfortunate fall. Plaintiff's injury was clearly *de minimis* and his claim to the contrary is not supported by the evidence.

§1915(e)(2)(B).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, September 21, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE